# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DWIGHT LOWAINE MCGEE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-011-TCK-FHM |
| | ) | |
| ROBERT PATTON, Director,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, a state inmate appearing pro se. Respondent filed a response (Dkt. # 6) and provided copies of the trial court transcripts and state record for use by the Court in this habeas action. See Dkt. # 8. Petitioner filed a reply (Dkt. # 9). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On February 19, 2008, Tulsa Police Officers Randy Mackenzie and Tim Wilson conducted an undercover operation to purchase cocaine from an individual named Sylynse Britt. (Dkt. # 8-4. Tr. Jury Trial, Feb. 5, 2009 at 186-88). Mackenzie received a phone call from Britt about "purchasing some cocaine from her." Id. at 186. Britt told Mackenzie to come to a motel named The Tudor House, Room 105, to make the purchase. Id. at 187. Mackenzie and Wilson, dressed

---

[1]Since Petitioner is incarcerated at Lawton Correctional Facility, a private prison, the proper respondent in this case is Robert Patton, Director of the Oklahoma Department of Corrections. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Robert Patton, Director, in place of David Miller, Warden, as party respondent in this action.

in plain clothes, arrived at The Tudor House around 9:45 p.m. Id. at 187-88. They observed a gold Chevy Blazer pull into the parking spot next to them and the driver, a black male dressed in white clothing, exit the Blazer and enter Room 105. Id. at 188-89, 251. This man was identified in court as Petitioner Dwight Lowaine McGee. Id.

Mackenzie and Wilson exited their vehicle, walked to Room 105, knocked on the door, and were granted entry by Britt. Id. at 190. As Mackenzie and Wilson entered the room, they observed Petitioner standing against the wall, partially hidden by the door of the hotel room. Id. at 191, 252. Mackenzie turned and faced Petitioner, while Wilson followed Britt and walked further into the motel room. Id. at 191-92, 252-53. Britt asked, "who wanted the twenty," and Mackenzie responded that he did. Id. at 192. Mackenzie testified that, as Britt walked towards him with the cocaine, Petitioner "pulled his hand out of his pocket and showed [Mackenzie] a clear baggie with some tannish rock inside consistent with cocaine base. And he said – he just said the word "hard," which is a common street term for cocaine base." Id. Mackenzie purchased the cocaine from Britt and then he and Wilson left the hotel. Id. at 194.

Approximately twenty minutes later, Mackenzie called Britt and arranged another drug purchase, and "she said to come to Room 105." Id. Mackenzie and Wilson returned to the motel and observed Petitioner sitting inside the gold Blazer in the parking lot. Id. Mackenzie went into Room 105, while Wilson stayed in the truck, observing Petitioner. Id. 194-95. Mackenzie purchased $40 of cocaine from Britt, returned to the truck, and he and Wilson left the motel. Id. at 195-96.

During this activity, Tulsa Police Officer Tom Henley was conducting visual surveillance on The Tudor House and Room 105 from the parking lot of a nearby NAPA Auto Parts store. Id.

2

at 297.  He testified that Petitioner exited Room 105 and returned to his vehicle, shortly after Mackenzie and Wilson left after making the first purchase.  Id. at 299.  Henley observed an individual, "that had just been walking around in the area," get into the passenger side of Petitioner's vehicle.  Id.  The occupant was "in the vehicle for a short period of time in which [sic] he exited and left."  Id. at 300.

After the second drug purchase, Mackenzie, Wilson, and Henley met at the NAPA Auto Parts store with Officers Letherman, Curry, Liedorff, and Frazier.  Id. at 196.  Mackenzie and Wilson briefed the other officers regarding the events in the motel room, and coordinated a return to the motel and the arrest of Britt.  Id. at 197, 257, 300-01.  The team of officers returned to Room 105, Mackenzie knocked on the door, with the team of officers behind him.  Id. at 197.  Britt opened the door, in the same manner as she had done both times before, and the officers entered.  Id. at 198-99.  Mackenzie told Britt he was a Tulsa Police officer and she was placed under arrest.  Id. at 199-200.

Petitioner was in Room 105 when police returned to arrest Britt.  Id. at 198.  Officer Henley placed Petitioner in cuffs, initially, for officer safety.  Id. at 265.  Mackenzie testified that after Britt was placed in cuffs, he approached Petitioner.  Id. at 200.  Petitioner said, "[i]t's in my car, the keys are in my pocket. . . . Yeah, it's under the seat, you can get it."  Id.  Henley retrieved the keys from Petitioner's pocket and handed them to Officer Frazier.  Id.   The search of Petitioner's vehicle revealed "a large plastic baggie containing a large, white rock-like substance, like in a wafer or cookie," "an additional plastic baggie that contained a white powdery substance," and "a green, leafy substance."  Id. at 291.  Frazier testified that based on his experience and training, the

substances were consistent with crack cocaine, powder cocaine, and marijuana, respectively. Id. Field tests on these substances were presumptively positive. Id. at 266-68.

Petitioner was arrested and taken to Mackenzie's unmarked truck. Id. at 201-02. Mackenzie, with Henley present, read Petitioner his rights under Miranda v. Arizona, 384 U.S. 436 (1966).[2] (Dkt. # 8-4. Tr. Jury Trial, Feb. 5, 2009 at 202). Petitioner then told Mackenzie "that the cocaine in the car was his[,] . . . that the rims on the Blazer he had purchased from selling cocaine[,] . . . [and] that he normally buys two and a quarter ounces of cocaine and then takes that cocaine and rocks it up to make cocaine base." Id. at 204; see also id. at 316-18.

Based on those events, Petitioner was charged in Tulsa County District Court, Case No. CF-2008-898, as follows: Trafficking in Illegal Drugs (Count III); Acquiring Proceeds from Drug Activity (Count IV); Possession of Controlled Drug - 2nd Offense (Count V); Possession of Paraphernalia (Count VI); and, Tax Stamp - Controlled Dangerous Substance (Count VII).[3] (Dkt. # 8-7, O.R. at 2-3). On February 20, 2009, Petitioner was convicted by a jury of Possession of Controlled Drug with Intent to Distribute After Two or More Previous Convictions (Count III) and Acquiring Proceeds from Drug Activity (Count IV), both After Two or More Previous Convictions. Id. at 14-15; Dkt. # 8-8, O.R. at 240, 246. The remaining charges were dismissed by the State. (Dkt. # 8-7, O.R. at 15). The jury recommended sentences of forty (40) years imprisonment on Count III,

---

[2]In Miranda, the Supreme Court found that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant was first advised of his right to remain silent, his right to an attorney, and that his statements may be used against him.

[3]Sylynse Michele Britt was also charged in Case No. CF-2008-898 with two counts of Distribution of Controlled Substance (Counts I and II) and Possession of Paraphernalia (Count VI). On April 2, 2008, she entered pleas of guilty and was convicted on all three counts. See Dkt. # 8-7, O.R. at 5-6. She received sentences of five (5) years suspended on each of Counts I and II, and one (1) year suspended on Count VI, all to run concurrently. Id.

and five (5) years imprisonment and a fine of $25,000 on Count IV.  (Dkt. # 8-8, O.R. at 241, 245).

On February 20, 2009, the trial judge sentenced Petitioner in accordance with the jury's

recommendation, with the sentences ordered to run consecutively.  Petitioner was represented at trial

by attorneys Jill Webb and M.J. Denman.

Petitioner, represented by attorney Curtis M. Allen, perfected an appeal to the Oklahoma

Court of Criminal Appeals (OCCA).  On appeal, Petitioner raised three (3) propositions of error, as

follows:

| | |
|---|---|
| Proposition One: | A: It was plain error for the judge to allow police officers to testify that a substance was cocaine, based solely upon its appearance or upon a non-testifying non-expert's assertions. |
| | B:  Counsel was ineffective in failing to object when police officers testified that a substance was cocaine, based solely upon its appearance or upon non-testifying non-expert's assertions. |
| | C:  The evidence is insufficient to support Appellant's conviction for possession of cocaine with intent to distribute in violation of 63 O.S. 2-402. |
| Proposition Two: | A: It was plain error for the judge to allow police officers to testify about uncharged misconduct that Mr. McGee was trafficking in drugs, distributing drugs and manufacturing drugs. |
| | B: Counsel was ineffective in failing to object when police officers testified about uncharged misconduct that Mr. McGee was trafficking in drugs, distributing drugs and manufacturing drugs. |
| | C: The State engaged in prosecutorial misconduct by eliciting from police officers and urging in closing arguments evidence of uncharged misconduct that Mr. McGee was trafficking in drugs, distributing drugs and manufacturing drugs. |
| Proposition Three: | The court abused its discretion when it ordered Mr. McGee's sentences to be served consecutively. |

(Dkt. # 6-1).  In an unpublished Summary Opinion, filed March 26, 2010, in Case No. F-2009-200, the OCCA affirmed Petitioner's Judgment and Sentence.  (Dkt. # 6-3).

On January 1, 2011, Petitioner commenced this habeas corpus action. (Dkt. # 1).  In his petition, Petitioner identifies three (3) grounds for relief, as follows:

Ground I:    Petitioner was denied the effective assistance of trial counsel when trial counsel failed to object to police officers [sic] testimony that a substance was cocaine based solely upon its appearance or upon a non-testifying witness, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground II:   The evidence was insufficient to convict Petitioner of Possession of Cocaine with Intent to Distribute and therefore his conviction is in violation of the Fourteenth Amendment to the United States Constitution.

Ground III:  Trial counsel's failure to object to uncharged conduct that Petitioner was trafficking in drugs, distributing drugs, and manufacturing drugs denied Petitioner the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Dkt. # 1).  In response (Dkt. # 6), Respondent argues that the OCCA's decision is not contrary to or an unreasonable application of federal law.  Additionally, Respondent argues that Grounds II and III are state law matters.  Id. at 12, 14.

### ANALYSIS

#### A.    Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must decide whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. at 510.  Petitioner fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to the claims raised in the petition.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

6

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  In affirming the trial court's judgment and sentence, the OCCA adjudicated the issues raised in the petition.  Thus, this Court shall review those grounds under § 2254(d).

**1.      Insufficient evidence (Ground II)**

In his second ground for relief, Petitioner claims that "[t]he evidence was insufficient to convict Petitioner of Possession of Cocaine with Intent to Distribute and therefore his conviction is in violation of the Fourteenth Amendment to the United States Constitution."  (Dkt. # 1 at 6).

Petitioner argues that the police officer testimony, identifying the substance as cocaine, was improper and that "[w]ithout the improper testimony regarding the substances believed to be drugs, the state cannot establish its proof." Id. On direct appeal, Petitioner argued that the substance "that Officer Mackenzie testified he saw in Mr. McGee's hand in his first [visit] to Room 105 at the Tudor House was neither recovered nor tested." (Dkt. # 6-1 at 5). Petitioner then argued that while the substances recovered from his vehicle were analyzed, "[t]he jury acquitted Mr. McGee of every count that arose from the search of the gold Blazer. . . . The jury convicted Mr. McGee of every count that arose from the Room 105 of the Tudor House." Id. at 6. Finally, Petitioner argued that "[p]olice officers cannot testify that a substance is crack cocaine merely by describing its appearance as 'some tannish rock' [and] effective defense counsel and honorable prosecutors know this." Id. at 9. Thus, Petitioner argued, "[t]here is no competent evidence to support the verdict of guilty to [sic] possession of cocaine base with intent to distribute." Id. at 10.

The OCCA found that "the trial court did not abuse its discretion in permitting the police officer to testify that the item observed in Appellant's hand was an illegal substance." (Dkt. # 6-3 at 2). The court found the testimony permissible because, "[t]he officer's opinion was properly based upon his specialized knowledge acquired through training and education." Id. Finally, it concluded that after "reviewing the evidence in the light most favorable to the State, . . . any rational trier of fact would have found beyond a reasonable doubt that Appellant committed the offense of Possession of CDS with Intent to Distribute." Id. at 3.

 Respondent argues that this is a state law matter and that "federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" (Dkt. # 6 at 12 (quoting Moore v.

Marr, 254 F.3d 1235, 1246 (10th Cir. 2001) (internal quotation omitted)).  Respondent also argues that this claim is entirely dependent upon the claim raised in Ground I.  Id.  In response to Ground I, Respondent argues that Oklahoma courts permit police officer testimony and circumstantial evidence to establish the identity of a substance under Swain v. State, 805 P.2d 684 (Okla. Crim. App. 1991).  Petitioner argues that the "circumstantial evidence referenced by the Respondent, . . . was insufficient to establish that the substance was in fact cocaine."  (Dkt. # 9 at 2).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial."  Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319).  In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."  Jackson, 443 U.S. at 319.  The court must  "accept the jury's resolution of the evidence as long as it is within the bounds of reason."  Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Notably, in Oklahoma, "expert testimony and chemical analysis results are not the only items of evidence which may be considered in determining whether the identity of an illegal substance has been established."  Swain, 805 P.2d at 685.  In Swain, the OCCA cited, with approval, United States v. Sanchez DeFundora, 893 F.2d 1173 (10th Cir. 1990), and stated that "'[a]s long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.'"

<u>Swain</u>, 805 P.2d at 685-86 (quoting <u>Sanchez Defundora</u>, 893 F.2d at 1175). The OCCA then adopted the criteria relevant to establishing the identity of a substance:

> evidence of the physical appearance of the substance involved in the transaction, . . . testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

<u>Id.</u> at 686 (internal quotations and citations omitted).

Petitioner, though charged with Trafficking in Illegal Drugs, was convicted of the lesser included offense of Possession of Controlled Drug with Intent to Distribute. (Dkt. # 8-7, O.R. at 2). Under Oklahoma law, to convict Petitioner of Unlawful Possession with Intent to Distribute, the State had to prove, beyond a reasonable doubt, that Petitioner knowingly or intentionally possessed cocaine base with an intent to distribute that cocaine base. <u>Id.</u> at 195. Petitioner claims that the only evidence offered to prove Possession with Intent to Distribute was the testimony of Officer Mackenzie, who testified that Petitioner pulled a baggie out of his pocket with a tannish rock inside consistent with cocaine base and said "hard," a street term for cocaine base. (Dkt. # 1 at 6; Dkt. # 6-1 at 5-10). Petitioner argues that because "no suspected drugs were tested to see whether they really were drugs, . . . there is no competent evidence to establish that the substance found was drugs." (Dkt. # 1 at 6).

After a review of the record and the evidence in a light most favorable to the State, any reasonable jury could have found proof beyond a reasonable doubt that Petitioner possessed cocaine base with an intent to distribute. Applying the elements set forth in <u>Swain</u> and <u>Sanchez DeFundora</u>, the State provided sufficient lay testimony and circumstantial evidence to prove the identity of the substance. First, Mackenzie testified that he observed a "tannish rock" inside the plastic baggie

10

Petitioner pulled out of his pocket.  (Dkt. # 8-4, Tr. Jury Trial, Feb. 5, 2009 at 192).  Mackenzie testified that, based on his experience in the Tulsa Police Special Investigations Division and Narcotics Unit, the appearance of the substance was consistent with "cocaine base."  Id. at 192-93. Next, Mackenzie testified that he arrived at the Tudor Inn for the purpose of buying cocaine from Britt in Room 105.  Id. at 186-87.  Mackenzie and Officers Wilson and Henley observed Petitioner entering Room 105 just before they entered to buy cocaine, id. at 189, 251, 297-98, and Petitioner remained in the room during the first drug buy.  Id. at 191.  Additionally, Mackenzie and Wilson testified that, when they entered the motel room, Petitioner appeared to be partially hiding behind the hotel room door and that his demeanor was suspicious and unusual.  Id. at 191, 253.  Next, when Britt was walking towards Mackenzie with "the twenty" bag of cocaine, Petitioner showed Mackenzie the baggie with the tannish rock and said, "hard," a known street term for cocaine base. Id. at 192.  Finally, when the team of officers entered Room 105 to arrest Britt and placed Petitioner in handcuffs, Petitioner was found with over $1,000.00 cash in his pocket, including the three marked $20 bills used by Mackenzie to make the two drug purchases earlier that night.  Id. at 307. Based on that evidence, any reasonable juror could have found proof beyond a reasonable doubt to convict Petitioner of Possession of Controlled Drug with Intent to Distribute.

Therefore, the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, of federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence presented at trial.  See 28 U.S.C. § 2254(d)(1), (2); Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Habeas corpus relief on Ground II is denied.

11

**2.      Ineffective assistance of trial counsel (Grounds I and III)**

In Ground I, Petitioner claims that his trial counsel was ineffective by failing to object to the testimony of police officers, identifying a substance as cocaine "based solely upon its appearance or upon a non-testifying witness." (Dkt. # 1 at 6).  Petitioner argues that "[u]nder Oklahoma law[,] the only illicit substances police officers can identify by their own senses are alcohol and Marijuanna [sic]." Id.  On appeal, the OCCA cited Phillips v. State, 989 P.2d 1017, 1044 (Okla. Crim. App. 1999) (relying on Strickland v. Washington, 466 U.S. 668, 687 (1984)), and found that "counsel's failure to object to the testimony was not indicative of ineffective assistance of counsel as any such objection would have been overruled.  Therefore, Appellant has failed to show any resulting prejudice from counsel's omission." (Dkt. # 6-3 at 3).  Respondent argues that this decision was not contrary to nor an unreasonable application of federal law. (Dkt. # 6 at 6).  In his Reply, Petitioner argues that the OCCA's decision was unreasonable in light of the fact that there was insufficient evidence. (Dkt. # 9 at 1).

In Ground III, Petitioner claims that his trial counsel failed "to object to uncharged conduct that Petitioner was trafficking in drugs, distributing drugs, and manufacturing drugs." (Dkt. # 1 at 6).  Petitioner argues that "[t]he method by which [he] paid for the rims on the gold Blazer at an unknown time in the past are circumstances completely unrelated to the events at the Tudor House Inn on February 9, 2008." Id.  On appeal, the OCCA cited Phillips, 989 P.2d at 1044, and concluded that the "prior bad acts or other crimes [evidence,] was properly admitted as part of the res gestae of the charged offenses." (Dkt. # 6-3 at 3).  Thus, "any objection by counsel would have been denied.  Therefore, Appellant cannot show prejudice sufficient to support his claim of ineffective assistance." Id.  Respondent argues that the OCCA's decision "is neither contrary to nor an

unreasonable application of federal law." (Dkt. # 6 at 13). Additionally, Respondent argues that because "the OCCA made a state law factual determination that the evidence in question was admissible because it was res gestae of the crime charged[, t]his factual determination is entitled to deference under the AEDPA." Id. at 14 (citing 28 U.S.C. § 2254 (d)(2)).

To be entitled to habeas relief on his claims of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of these claims is contrary to Strickland. Under the familiar, two-prong constitutional standard set forth in Strickland, a petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 131 S. Ct. 770, 791 (2011) (quoting Strickland, 466 U.S. at 686). "The Strickland standard must be applied with 'scrupulous care.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1408 (2011) (quoting Richter, 131 S. Ct. at 788).

A petitioner can establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Assessing attorney performance requires every effort to avoid hindsight bias and evaluate conduct from counsel's perspective at the time. Id.

13

To establish the second prong, a petitioner must show that counsel's deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1472 (10th Cir. 1997).  If a petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails.  Strickland, 466 U.S. at 700.  Thus, it is not always necessary to address both Strickland prongs.  This Court's review of the OCCA's decision on the ineffective assistance of counsel claims is "doubly deferential."  Pinholster, 131 S. Ct. at 1403 (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

As to Ground I, the OCCA's decision that Petitioner "failed to show any resulting prejudice from counsel's omission," is not contrary to the Strickland standard.  This Court stated above, that Oklahoma courts permit circumstantial evidence to establish the identity of illegal substances. Swain, 805 P.2d 684.  Thus, Petitioner has failed to show that had his trial counsel objected to the testimony, it would have been barred.  As a result, Petitioner has failed to show that trial counsel's performance fell below the standard of a reasonably competent attorney and has failed to show that there is a reasonable probability that the result of the proceeding would have been different had his counsel objected to the testimony of the police officer regarding the identity of the substance. Petitioner has failed to demonstrate that the OCCA's adjudication of the claim raised in Ground I was an unreasonable application of Strickland.

As to Ground III, Petitioner fails to show that he was prejudiced by counsel's failure to object to the introduction of his statements about the gold rims on his Blazer.  In Oklahoma, evidence of uncharged other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."  Douglas v. State, 951 P.2d 651, 673 (Okla. Crim. App. 1997); OKLA. STAT. tit. 12, § 2404.  "Evidence is considered res gestae, a) when it is so closely connected to the charged offense as to form part of the entire transaction, b) when it is necessary to give the jury a complete understanding of the crime, or c) when it is central to the chain of events."  Rogers v. State, 890 P.2d 959, 971 (Okla. Crim. App. 1995).  Here, Petitioner faced charges of Trafficking in Illegal Drugs (Count III) and Acquiring Proceeds from Drug Activity (Count IV).  (Dkt. # 8-7, O.R. at 50-51).  It was not unreasonable for the OCCA to conclude that Petitioner's statement about how he purchased the rims on his Blazer was part of the res gestae of the crime.  After reviewing the record, the Court concludes that Petitioner cannot show that this statement would have been excluded had his trial counsel objected.  Thus, Petitioner has failed to show that his counsel's failure to object fell below the standard of a reasonably competent attorney, nor has he shown how he was prejudiced by the failure to object.  Petitioner has failed to demonstrate that the OCCA's adjudication of the claim raised in Ground III was an unreasonable application of Strickland.

In summary, because Petitioner has failed to show how he was prejudiced by trial counsels' failure to object to the testimony identified in Grounds I and III, Petitioner has failed to meet his burden under both Strickland and 28 U.S.C. § 2254(d).  Habeas corpus relief is denied on Grounds I and III.

15

### C.     Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason.  <u>See</u> <u>Dockins</u>, 374 F.3d 935.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    The Clerk of Court shall substitute Robert Patton, Director, as party respondent in this case.

2.    The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.    A certificate of appealability is **denied**.

4.    A separate judgment shall be entered in this matter.


**DATED** this 6th day of March, 2014.


**TERENCE KERN**
**United States District Judge**